**Mary Elizabeth HARRISON, Appellant**

v.

**The STATE of Texas.**

**No. PD–1193–04.**

Court of Criminal Appeals of Texas.

Nov. 1, 2006.

---

Robert Ford, Fort Worth, for appellant.

Anne Swenson, David M. Curl, Asst. Crim. Dist. Atty's, Fort Worth, Matthew Paul, State's Atty., Austin, for State.

## *OPINION*

KEASLER, J., delivered the opinion of the Court in which KELLER, P.J., WOMACK, HERVEY, and COCHRAN, JJ., joined.

Holding that the State failed to prove by clear and convincing evidence that Mary Elizabeth Harrison voluntarily consented to provide a urine specimen, the court of appeals reversed the trial court's denial of Harrison's motion to suppress.[1] We con-

clude that the court of appeals erred by so holding.

## Facts and Procedural History

While driving in the City of Arlington on the afternoon of August 8, 2002, Vickie Evans called 911 to report that Harrison was driving while intoxicated or was having a seizure. As she continued to follow Harrison, Evans remained on the phone, advising police of Harrison's location.

Officer Lodatto, who was dispatched as a result of Evans's 911 call, first spotted Harrison as a fellow officer, Officer Constantine, was directing her to pull over and stop in a parking lot. Evans also stopped. While Constantine initiated contact with Harrison, Lodatto spoke with Evans. Evans informed Lodatto that while she had been following Harrison, she observed Harrison going from lane to lane, fidgeting, and "flopping around like a fish" inside her car. Lodatto then approached Harrison while she was standing outside her car talking with Constantine. Observing Harrison's behavior and demeanor, Lodatto noticed that she was "continuously fidgeting, moving around, bending around at the waist, [and] lifting up her legs...." Lodatto then administered a number of field sobriety tests. Based on Harrison's overall performance on the tests, Lodatto concluded that Harrison was under the influence of an intoxicant other than alcohol.

Harrison was placed under arrest and transported to the county jail, where Lodatto asked her to provide breath and blood specimens. After Lodatto warned Harrison of the consequences of refusing to submit the specimens as required by the Transportation Code,[2] Harrison consented. When Harrison's breath tested negative

---

1. *Harrison v. State*, 144 S.W.3d 82, 89–90 (Tex.App.-Fort Worth 2004).

2. *See* Tex. Transp. Code §§ 724.011–724.013, 724.015 (Vernon 2001).

for alcohol, Lodatto and another officer, Officer DeMott, took Harrison to Arlington Memorial Hospital to obtain a blood sample. Although a nurse tried to draw blood from Harrison's hands and arms five or six times, a testable amount could not be obtained because her veins repeatedly collapsed.

The unsuccessful attempts to draw blood caused Harrison pain and resulted in bruising. But according to DeMott, Harrison remained cooperative and even assisted the nurse by instructing her on the best way to take the sample. At some point, the nurse began to examine Harrison's feet for a site to draw blood. However, DeMott, who had taken note of the fact that the unsuccessful attempts to draw blood inflicted pain upon Harrison, asked Harrison if she would be willing to provide a urine sample. Harrison agreed to provide a urine sample to avoid being stuck with the needle again and to avoid having her driver's license suspended. Neither officer informed Harrison that she did not have to give a urine sample. They also failed to inform her that her license would not be suspended in the event that she refused to provide a urine sample. Harrison's urine did test positive for controlled substances, and she was later charged with misdemeanor driving while intoxicated.

Harrison filed a motion to suppress alleging that her rights under the United States and Texas Constitutions were violated. She argued that the stop was not supported by reasonable suspicion and that her consent to provide a urine sample was involuntary. The trial court denied the motion. The court found that the police had reasonable suspicion for the stop and that Harrison consented to the urine sample, although it presented a "closer question."

On April 21, 2003, pursuant to a plea agreement, Harrison pled guilty. Her sentence was assessed at 180 days in jail, probated for two years, and a fine of $500.

Harrison appealed the trial court's denial of her motion to suppress. She argued that the trial court erred in finding that the stop was supported by reasonable suspicion. She further claimed that the court erred in finding that she voluntarily consented to submitting a urine sample, maintaining that the State failed to prove voluntariness by clear and convincing evidence.

Responding to Harrison's claims, the State argued that the trial court did not err in denying Harrison's motion to suppress. The State claimed that the stop was supported by reasonable suspicion and that Harrison's consent to provide a urine sample was voluntary. Relying on this Court's opinion in *Hulit v. State*,[3] the State also argued that Article I, Section 9 of the Texas Constitution did not require the State to prove voluntary consent to obtain a urine sample. Rather, it required the State to establish only that the request was reasonable.

The Second Court of Appeals found that "the information provided by Evans was sufficiently reliable to provide police with reasonable articulable suspicion to initiate an investigative stop of Harrison."[4] Before determining whether the State proved voluntary consent, the court stated, "we decline to adopt the State's contention that pursuant to *Hulit* ..., the State has no burden to prove consent or the voluntariness of consent, but must prove only reasonableness of police conduct."[5] The

---

3.  982 S.W.2d 431 (Tex.Crim.App.1998).

4.  *Harrison,* 144 S.W.3d at 87.

5.  *Id.* at n. 3.

court went on to find that the State failed to prove by clear and convincing evidence that Harrison's consent was voluntary.[6] In doing so, the court stated:

> Because all three witnesses at the suppression hearing agreed that Harrison was in pain and agreed to provide the urine specimen to avoid further needle sticks, agreed Harrison was not advised of her right to decline to provide a urine specimen, and agreed Harrison was not informed her license would not be suspended if she refused, we cannot hold that the State met its heightened burden to prove voluntariness of Harrison's consent under the totality of the circumstances by clear and convincing evidence.[7]

As a result, the court reversed the trial court's judgment and remanded the case for a new trial.[8]

The State petitioned for review, and we granted its five grounds for review. The State's fifth ground for review states: "Do the evidentiary factors relied upon by the court of appeals to find involuntary consent invade the role assigned to the trial court by failing to place the evidence in context, and by determining matters of historical fact?" Because the record shows that the Court of Appeals erred in finding that the State failed to establish voluntariness, we need not consider the State's first four grounds for review.

## Law and Analysis

Under Article I, Section 9, of the Texas Constitution, "[a] search made after voluntary consent is not unreasonable."[9] If voluntariness is challenged at trial, "the State must prove the voluntariness of a consent to search by clear and convincing evidence."[10] A trial judge "must look at the totality of the circumstances surrounding the statement of consent in order to determine whether that consent was given voluntarily."[11] When a trial judge does not enter findings of fact when denying a motion to suppress, a reviewing court must view the evidence "in the light most favorable to the trial court's ruling" and "assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record."[12] And almost total deference must be afforded to the trial judge's rulings on credibility questions.[13]

Here, the record reflects that

- Harrison had consented to a much more invasive and painful procedure;
- Harrison at no time withdrew her consent to the blood test;
- police used no coercion or threats to compel consent; and
- Harrison said that she consented to avoid further sticks with the needle and to avoid having her driver's license suspended.

The Court of Appeals found that "[t]he fact that Harrison's consent was given to

---

6. *Id.* at 89.

7. *Id.*

8. *Id.* at 89–90.

9. *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim.App.2000).

10. *State v. Ibarra*, 953 S.W.2d 242, 245 (Tex. Crim.App.1997).

11. *Reasor*, 12 S.W.3d at 818; *see also Johnson v. State*, 68 S.W.3d 644, 653 (Tex.Crim.App. 2002) (citing *Ohio v. Robinette*, 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)).

12. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim.App.2000).

13. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997).

avoid painful physical pressures—more needle sticks, probably in her feet—weighs against voluntariness." [14] But the court failed to take into account the fact that Harrison did not withdraw her consent to provide a blood specimen before she consented to provide a urine specimen, a less-invasive alternative. So unlike cases where the person's consent is the result of physical or psychological pressure from law enforcement officials,[15] Harrison willingly chose to give her consent to a painless alternative.

Also, when finding that the State failed in its burden to prove Harrison's consent was voluntary, the Court of Appeals relied on the fact that the police officers did not inform Harrison that she could refuse to provide a urine sample and that they failed to advise Harrison that the consequences applicable to a person's refusal to provide a blood specimen do not apply when an individual refuses to submit a urine specimen.[16] But the fact that the statutory warnings were read to Harrison and that she consented to provide a blood specimen to the police officers does not mean that the officers were then obligated to inform her, before requesting a urine specimen, that the consequences associated with refusing to provide a blood specimen do not apply to a person's refusal to submit to a urine specimen. Although Harrison's belief that the consequences associated with a refusal to provide a blood specimen, specifically, the automatic suspension of her driver's license, may be a relevant factor when assessing whether her consent was voluntary, we cannot conclude that it is controlling. Further, even though a person's knowledge of his or her right to refuse consent is also a relevant factor when determining voluntariness, it is not determinative.[17] And while custody is another factor to be considered,[18] "consent is not rendered involuntary merely because the accused is under arrest." [19] The trial judge, as the fact-finder, presumably considered these factors when observing the demeanor of the officers and Harrison at the hearing on the motion to suppress, something that neither we nor the Court of Appeals have had the opportunity to do.

The dissent states that

[i]t is hard to believe that the trial court could find that it was highly probable or reasonably certain that Appellant consented to the urine test when she was not given statutory warnings prior to consenting to giving a urine specimen and when both officers who testified about the consent stated that they did not inform Appellant that she could refuse to provide a sample without losing her driver's license.

The dissent's reasoning is flawed. Simply put, Texas statutes did not require that Harrison be given any statutory warnings before she was asked for her consent to provide a urine specimen.[20] And the officers were not required to inform Harrison that she could refuse to provide a urine

---

14. *Harrison*, 144 S.W.3d at 89.

15. *Erdman v. State*, 861 S.W.2d 890, 893 (Tex.Crim.App.1993).

16. *Harrison*, 144 S.W.3d at 89.

17. *Draper v. State*, 539 S.W.2d 61, 63 (Tex. Crim.App.1976) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)); *Allridge v. State*, 850 S.W.2d 471, 493 (Tex.Crim.App.1991).

18. *Meeks v. State*, 692 S.W.2d 504, 509 (Tex. Crim.App.1985).

19. *Johnson v. State*, 68 S.W.3d 644, 653 (Tex. Crim.App.2002) (citing *Meeks*, 692 S.W.2d at 509).

20. Tex. Transp. Code §§ 724.011–724.013, 724.015.

sample without losing her driver's license simply because they first sought breath and blood specimens after giving her the required statutory warnings.[21] The dissent also incorrectly states that "the majority claims that because Appellant was given statutory warnings about giving a blood sample and consented, the officers were not obligated to inform her that the consequences of failure to consent to giving a breath or blood specimen do not apply to failure to give a urine specimen." Our conclusion is that the request for breath and blood specimens, to which the statutory warnings were applicable, is entirely distinct from the request for a urine specimen. The request for a urine specimen, which followed the request for breath and blood specimens, did not need to be paired with a statement that the previously given statutory warnings were inapplicable.

It may be argued that Harrison was misled by the officers because had Harrison been allowed to contact her attorney as she had requested, her attorney could have informed her that she could refuse the request for a urine sample without losing her license. But Harrison did not have the right to have an attorney present[22] and, for the reasons discussed above, the officers did nothing to mislead Harrison.

Considering all of the facts before us, and giving proper deference to the trial judge's credibility determinations, we cannot say that the trial judge erred in deciding that the State proved by clear and convincing evidence that Harrison's consent was voluntary.

---

21. TEX. TRANSP. CODE § 724.015.

22. *Griffith v. State,* 55 S.W.3d 598, 604 (Tex. Crim.App.2001); *Garcia v. State,* 787 S.W.2d 957, 958 (Tex.Crim.App.1990).

### Conclusion

We hold that the Court of Appeals erred in finding that Harrison's consent was not voluntary. We therefore reverse its decision and affirm the judgment of the trial court.

PRICE and JOHNSON, JJ., concurred in the result.

MEYERS, J., filed a dissenting opinion in which HOLCOMB, J., joined.

MEYERS, J., filed a dissenting opinion, in which HOLCOMB, J., joined.

In determining whether a defendant voluntarily consented to a search, we consider the totality of the circumstances, and the burden is on the State to prove by clear and convincing evidence that the consent was voluntary. Clear and convincing evidence is "evidence indicating that the thing to be proved is highly probable or reasonably certain."[1] It is hard to believe that the trial court could find that it was highly probable or reasonably certain that Appellant consented to the urine test when she was not given statutory warnings prior to consenting to giving a urine specimen and when both officers who testified about the consent stated that they did not inform Appellant that she could refuse to provide a sample without losing her driver's license.

Nonetheless, the majority claims that because Appellant was given statutory warnings about giving a blood sample and consented, the officers were not obligated to inform her that the consequences of failure to consent to giving a breath or blood specimen do not apply to failure to give a urine sample. The majority also

---

1. *See* Black's Law Dictionary 457 (7th ed.2000).

says that, although the police failure to inform Appellant of her right to refuse the urine test was a relevant factor in assessing the voluntariness of her consent, it was not controlling, and that her knowledge of her right to refuse consent is not determinative of whether her consent was voluntary. Presuming that the trial judge considered these factors and assessed the credibility and demeanor of the witnesses, the majority holds that the trial judge properly found that the State proved by clear and convincing evidence that the consent was voluntary. How do these factors, each of which lean in Appellant's favor and each of which indicate that consent was uninformed, add up to highly probable or reasonably certain evidence that Appellant's consent to give a urine sample was voluntary?

In addition to the fact that Appellant was not informed of her right to refuse consent and was not informed that the consequences of refusing to provide a blood sample did not apply to a urine sample, the court of appeals also considered the fact that 1) Appellant had been arrested, transported to the hospital in handcuffs, and was in custody at the time she consented, indicating that she was not aware that she was free to refuse to submit a urine sample; 2) that she was induced to consent in order to avoid additional pain from the repeated needle sticks, which were causing collapsed veins and bruising; and 3) that her license was very important to her and she only consented because she did not want to lose her license. The record additionally indicates that Appellant asked for her attorney repeatedly throughout this process and the officers told her that she could call her attorney after she completed the breath tests. Perhaps if the officers had

allowed Appellant to call her attorney, then her attorney could have informed her of her right to refuse to consent to a urine sample without losing her license, rather than being misled by the officers. Since there was not a single witness who claimed that Appellant's consent was informed, it is difficult to see how the consent could be considered voluntary.

I disagree with the majority's contention that the court of appeals failed to give proper deference to the trial court's findings.[2] The court of appeals properly reviewed the evidence and held that there was not clear and convincing evidence to prove that Appellant voluntarily consented to the urine sample. Therefore, I respectfully dissent.

---

2. Although findings were requested when the trial judge ruled on the motion to suppress, there is nothing in the record indicating that findings of fact were entered.