MEMORANDUM OPINION



No. 04-08-00257-CR



Stephen HAMLIN,


Appellant



v.



The STATE of Texas,


Appellee



From the 290th Judicial District Court, Bexar County, Texas


Trial Court No. 2007-CR-0123


Honorable Sharon MacRae, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Catherine Stone, Chief Justice

 Karen Angelini, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: April 1, 2009


AFFIRMED

 Stephen Hamlin was charged with possession of methamphetamine. After the denial of his
motion to suppress, he entered into a plea-bargain agreement and, in accordance with that agreement,
was sentenced to twelve years imprisonment and a fine of $2,000. On appeal, he argues that the trial
court should have granted his motion to suppress. We affirm.

Background 


 At the hearing on Hamlin's motion to suppress, four witness testified: Officer Marty Laurenz;
Officer Louis Tijerina; Allen Harvison, a private investigator hired by Hamlin; and the defendant,
Stephen Hamlin. At the end of the hearing, the trial court denied Hamlin's motion to suppress. 

 Officer Marty Laurenz

 Officer Marty Laurenz testified that on the night of October 25, 2006, he and Officer Tijerina
were on patrol when they saw a vehicle with a broken headlight. According to Officer Laurenz, after
they stopped the vehicle, he dealt with the passenger, and Officer Tijerina dealt with the driver,
Appellant Stephen Hamlin. When a computer check indicated that the passenger had an outstanding
warrant relating to a traffic offense, Officer Laurenz arrested the passenger. 

 With respect the driver, Officer Laurenz testified that Officer Tijerina asked the driver,
Hamlin, to get out of the vehicle and asked the driver whether he could search the vehicle. According
to Officer Laurenz, Hamlin said, "Yes." As Officer Tijerina was searching the car, Officer Laurenz
asked Hamlin whether Hamlin had anything on his person that Officer Laurenz "needed to know
about." Hamlin replied "No." Officer Laurenz then asked if he could search Hamlin. Hamlin said
"yeah, he didn't have a problem with it." According to Officer Laurenz, during his search of Hamlin,
he found in Hamlin's pocket a small clear plastic baggie containing what appeared to be
methamphetamine. So, Officer Laurenz placed Hamlin under arrest. 

 According to Officer Laurenz, Officer Tijerina then "finished the search and found more
narcotics in [Hamlin's] sock." The officers then had an evidence technician come and field test the
substance, and the substance tested positive for methamphetamine. 

 On cross-examination, when asked why he asked to search Hamlin, Officer Laurenz replied,
"Because of the high crime area." Also on cross-examination, Officer Laurenz testified that the
driver did not do anything that suggested a search was needed; he had a valid driver's license and
proof of insurance; he did not show signs of intoxication; a computer check did not indicate any
active warrants; and, a computer check did not indicate the car was stolen. Further, Officer Laurenz
admitted that the passenger's and the driver's explanations of where they were going and their reason
for being there were consistent. According to Officer Laurenz, neither did anything that caused him
concern. Finally, Officer Laurenz testified that he was probably at the scene for at least forty-five
minutes. 

 On re-direct, Officer Laurenz explained that running the computer check on the passenger
and "get[ting] the identification and everything" took about ten to fifteen minutes. According to
Officer Laurenz, during this period of time, the driver was still in the vehicle behind the steering
wheel. Only after the passenger was "secured" did Officer Tijerina approach the driver and ask to
search the vehicle, which Officer Laurenz estimated occurred about fifteen to twenty minutes after
the initial stop. Then, because narcotics were found, they had to have an evidence technician come
out to field test the suspected substance, which because the technicians "are tied up on other calls
like burglaries" can take some time. So, Officer Laurenz estimated that the entire stop took forty-five
minutes to an hour.

 Officer Louis Tijerina

 Like Officer Laurenz, Officer Louis Tijerina testified that they stopped the vehicle in question
because of a broken headlight. According to Officer Tijerina, he approached the vehicle and asked
the driver, Hamlin, for identification and proof of insurance. Officer Laurenz approached the
passenger. Then, they both went back to the patrol car to run computer checks. The check on the
passenger indicated that he had an outstanding warrant. Officer Laurenz then took the passenger to
the patrol car while Officer Tijerina remained with the driver and asked the driver for consent to
search the vehicle. The driver, Hamlin, was still sitting in his vehicle. Hamlin consented to the
search, and Officer Tijerina then asked him to step out of the vehicle. Officer Tijerina then searched
the vehicle. Officer Tijerina testified that he searched the car only once. Officer Tijerina estimated
that he started searching the vehicle about "three to five minutes" after the stop. 

 Allen Harvison

 Allen Harvison, a private investigator hired by Hamlin, testified that he subpoenaed an audio
recording, which also had a log, from the City of San Antonio. According to Harvison, the audio
recording indicated that at 12:59 a.m., Officer Laurenz and Officer Hamlin were "attempting to make
a traffic stop, and they say never mind, he's turning left." (1) According to Harvison, at 1:37 a.m., the
audio recording indicated that they were at the scene of the traffic stop. At 1:55 a.m., the officers
asked for a case number. At 2:03 a.m., they requested an evidence technician, who arrived at 2:41
a.m. 

 Stephen Hamlin

 According to Hamlin, he was leaving the Wal-Mart and signaled to turn left. He was stopped
by the police almost immediately after turning on to the highway. The officer informed him that he
had been stopped for a broken headlight. The officer asked for his license and insurance. According
to Hamlin, when the officer came back, his attitude had completely changed, and he started asking
Hamlin about his prior arrests for possession of methamphetamine. The officer asked for consent
to search the vehicle, and Hamlin gave consent. According to Hamlin, the officer searched the car
"at least three to four times, and there were other units that stopped and searched it as well." Hamlin
was then asked by the other officer for consent to search his person. Hamlin testified that only after
being "intimidated" for about fifteen minutes did he consent to the search of his person. 

 Further, according to Hamlin, he was asked to give consent to search his person about thirty-five to forty minutes after the initial stop. Hamlin also testified that after the initial stop, "it was well
over an hour-and-a-half before [the officers] got a case number." And, Hamlin estimated that the
entire stop lasted two to two-and-a-half hours. 

Motion to Suppress


 Hamlin does not contest the initial stop of his vehicle; he admits that his headlight was
broken. Instead, Hamlin argues that the trial court erred in not granting his motion to suppress
because his detention was unconstitutionally prolonged.

 In a motion to suppress, we "view the record in the light most favorable to the trial court's
conclusion and reverse the judgment only if it is outside the zone of reasonable disagreement." State
v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). "We give almost total deference to a trial
court's express or implied determination of historical facts and review de novo the court's
application of the law of search and seizure to those facts." Id.

 Hamlin argues that once Officer Tijerina obtained his driver's license and proof of insurance,
and then ran a computer check that did not result in any outstanding warrants, Officer Tijerina's
investigation into the traffic violation was over, and Hamlin should have been allowed to leave.
Thus, Hamlin argues he was illegally detained because the officer was conducting a "fishing
expedition" in violation of the Fourth Amendment to the Constitution.

 While it is true that once the purpose of a traffic stop has been satisfied, the stop may not be
used as a fishing expedition to discover unrelated criminal activity and that any continued detention
must be supported by additional reasonable suspicion, Davis v. State, 947 S.W.2d 240, 245 (Tex.
Crim. App. 1997), in this case, Hamlin gave consent to search his vehicle and person. Reviewing
the record in the light most favorable to the trial court's ruling, we note that Officer Tijerina testified
that immediately after conducting the computer check, he asked for and was granted consent to
search the vehicle. Officer Laurenz testified that while Officer Tijerina was conducting the vehicle
search, he asked and was granted consent to search Hamlin's person. "Merely requesting such
consent does not amount to an unlawful seizure, and neither probable cause nor reasonable suspicion
is required for the officer to ask." Guerrero v. State, No. 04-04-00684-CR, 2005 WL 2438315, at
*2 (Tex. App.--San Antonio 2005, no pet.) (not designated for publication); see also James v. State,
102 S.W.3d 162, 173 (Tex. App.--Fort Worth 2003, pet. ref'd). "Nor does the encounter become
a further detention simply due to the request for permission to search." Guerrero, 2005 WL 2438315,
at *2. Thus, we hold that Hamlin was not illegally detained. See id. (holding that because defendant
gave consent to search, defendant was not illegally detained even though officer had already given
defendant a verbal warning for traffic violation).




Consent to Search Person


 Hamlin also argues that (1) the State failed to show by clear and convincing evidence that
Hamlin's consent to search his person was voluntary, and (2) even if his consent was voluntary, the
search of his person exceeded the scope of his consent. (2) 

 Voluntariness is a question of fact to be determined from the totality of the circumstances.
Ohio v. Robinette, 519 U.S. 33, 40 (1996). If voluntariness is challenged in the trial court, the State
under the United States Constitution must prove voluntariness of consent by a preponderance of the
evidence. Carmouche v. State, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). Under the Texas
Constitution, the State must prove voluntariness by clear and convincing evidence. Id. Further, when,
as here, a trial court does not enter findings of fact when denying a motion to suppress, we must
"view the evidence in the light most favorable to the trial court's ruling and assume that the trial
court made implicit findings of fact that support its ruling as long as those findings are supported by
the record." Harrison v. State, 205 S.W.3d 549, 552 (Tex. Crim. App. 2006). And, we afford almost
total deference to the trial court's rulings on credibility questions. Id.

 Officer Laurenz testified that while Officer Tijerina searched Hamlin's car, he asked Hamlin
to come to the back of the car with him. Officer Laurenz then asked Hamlin if he had anything on
his person that Officer Laurenz needed to know about. According to Officer Laurenz, Hamlin
responded, "No." Officer Laurenz then asked Hamlin if he could search Hamlin's person. Officer
Laurenz testified, "He said, yeah, he didn't have a problem with it. So, then I started to search him,
and I found a small clear plastic baggie" of what appeared to be methamphetamine in Hamlin's right
front jeans pocket. On cross-examination, when asked if he did a pat-down search, Officer Laurenz
replied, "I asked him if he had anything on him that I needed to know about, at which time he said,
no. I then asked if I could search, and he said, yes." Officer Laurenz then confirmed that he never
does a pat-down search without first asking for consent.

 In contrast, Hamlin testified that at first, he did not give consent to search his person.
According to Hamlin, Officer Laurenz told him to put his hands against the car so that he could
search Hamlin. Hamlin testified that after fifteen minutes of Officer Laurenz "intimidat[ing]" him
and of him repeatedly telling the officer "no," Hamlin finally "[p]ut my hands against the car and let
him search me." And, according to Hamlin, when Officer Laurenz conducted the search, "he turned
pockets inside out and took everything out of [his] pockets." 

 Hamlin also emphasizes that although officers have written consent forms, Hamlin was not
asked to sign a written consent form. However, Officer Laurenz testified that they did not use the
forms on the night in question because they did not have the forms with them on that particular night. 

 In reviewing the evidence under our standard of review, we find no error on the part of the
trial court. Whether Hamlin nonchalantly gave consent, as testified to by Officer Laurenz, or whether
he was intimidated into giving consent, as testified to by Hamlin, is a credibility question. Likewise,
whether Hamlin was not asked to sign a written consent form because he, in fact, never gave consent,
or whether he was not asked to sign a written consent form because none were available on the night
in question is also a credibility question. Similarly, whether Hamlin consented only to a pat-down
search and whether Officer Laurenz exceeded the scope of that consent by pulling out his pockets
is a credibility question. The trial court observed the demeanor of the witnesses and judged their
credibility. We must defer to the trial court's determination of such credibility questions.

Conclusion


 We affirm the judgment of the trial court.


 Karen Angelini, Justice

DO NOT PUBLISH

1. At the end of the hearing, Hamlin's attorney argued that this testimony showed that Officers Laurenz and
Tijerina initially stopped Hamlin at 12:59 a.m. In response, the State stated that "there was a record of 12:59 that was
testified to by the defense witness." According to the State, "It sounded to me in the testimony like the officers were in
the area of Austin Highway, and they were following someone, and they waved that person off because [he] made a turn."
The trial court replied, "That's what I remember." 
2. We note that the State argues that Hamlin has waived this second issue. However, we need not address
waiver as we are upholding the trial court's credibility determination regarding whether the search exceeded the scope
of Hamlin's consent.