*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



★  ★  ★       ★  ★  ★  ★

# MEMORANDUM OPINION

No. 04-08-00794-CR

David Edward **GARZA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-7511
Honorable Philip A. Kazen, Jr., Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:        Sandee Bryan Marion, Justice
                Rebecca Simmons, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:  November 4, 2009

AFFIRMED

      Appellant David Edward Garza was convicted by a jury for the murder of his wife Julie Garza and assessed a term of life imprisonment.  On appeal, Garza argues: (1) the trial court erred in denying his motion to suppress the body because the police entered the mobile home without a warrant; (2) the trial court erred in denying his motion to suppress the DNA sample provided by Garza because Garza did not knowingly, intelligently, or voluntarily consent; and

(3) the evidence is legally and factually insufficient to support the conviction of murder. We affirm the judgment of the trial court.

## BACKGROUND

Julie Garza was found dead in her mobile home on July 9, 2006. Appellant David Garza, Julie's estranged husband, was later apprehended and placed under arrest. Garza signed a waiver of consent to search and provided a DNA sample to the officers. The jury subsequently found Garza guilty of murder and sentenced him to life imprisonment.

## STANDING TO CONTEST SEARCH OF JULIE'S MOBILE HOME

Garza asserts the trial court erred in denying his motion to suppress the evidence of Julie's body because police entered Julie's mobile home without a warrant. The trial court held that Garza lacked standing to contest the validity of the search since it was neither his home nor was he a permitted, overnight guest in the home.

### A. Standard of Review

We review the issue of standing to contest a search de novo. *Parker v. State*, 182 S.W.3d 923, 925 (Tex. Crim. App. 2006). The trial court, however, is the sole trier of fact and judge of the credibility of witnesses and "may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted." *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (en banc) (citations omitted). Because the issue of standing turns solely on the credibility of a witness, appellate courts afford almost total deference to the trial court's determination. *See id*. at 856.

### B. Standing

A court may only consider a substantive Fourth Amendment violation after a defendant has established standing to complain. U.S. CONST. amend. IV; *Luna v. State*, 268 S.W.3d 594,

603 (Tex. Crim. App. 2008). To challenge a search, the defendant must have a legally protected right to the expectation of privacy. *Parker*, 182 S.W.3d at 925; *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). A defendant bears the burden of demonstrating a legitimate expectation of privacy in the place searched and, thus, standing to contest the search. *Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002); *accord Handy v. State*, 189 S.W.3d 296, 299 n.2 (Tex. Crim. App. 2006) (stating a defendant "always has the burden of proving standing to complain of the search").

Garza argues that his status as an overnight guest created a reasonable expectation of privacy in Julie's residence. In *Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990), the United States Supreme Court held that a person's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." However, the Texas Court of Criminal Appeals has recognized that once a person has been asked to leave the premises "by one with authority to exclude him, and where that person has a reasonable opportunity to gather his personal effects prior to leaving, any expectation of privacy that he maintains in the premises is no longer one that society would view as reasonable." *Granados*, 85 S.W.3d at 226.

Julie was the sole signatory of the lease and sole occupant of the residence in question. During the motion to suppress hearing, the only evidence suggesting Garza might qualify as an overnight guest was cross-examination testimony revealing he had *previously* been Julie's invited guest. However, after the break-up of the marriage, Julie asked Garza to leave the mobile home, and he began staying with a friend. The trial court opined "there doesn't seem to be any evidence in the record that the Defendant has any standing to contest the search." We agree.

There is no evidence that Garza had permission to be on the premises "on the occasion of the search at issue." *See Granados*, 85 S.W.3d at 225. In light of the totality of the circumstances, we conclude that Garza did not have a reasonable expectation of privacy in the residence on the day of the search. *Id*. at 223. Because Garza failed to meet the burden required to establish standing, the trial court did not err in denying his motion to suppress.[1]

**MOTION TO SUPPRESS DNA SAMPLE**

Garza asserts the trial court also erred in denying the motion to suppress his DNA sample because his consent was not knowingly, intelligently, and voluntarily given. The trial court overruled the objections raised as to consent, based on Garza's signature on the consent card, the audio recording of the interview between the officers and Garza, and the testimony of the detectives.

## A. Standard of Review

"We review a trial court's ruling on a motion to suppress for an abuse of discretion, affording almost total deference to the trial court's determination of historical facts that the record supports, especially when based on an evaluation of the witness's credibility and demeanor." *Dossett v. State*, 216 S.W.3d 7, 23 (Tex. App.—San Antonio 2006, pet. ref'd) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We review the application of the law to the facts de novo. *Dossett*, 216 S.W.3d at 23; *Perez v. State*, 103 S.W.3d 466, 468 (Tex. App.—San Antonio 2003, no pet.).

---

[1] Because Garza lacked standing, this court need not address the issues of exigent circumstances or the emergency exception. *See* TEX. R. APP. P. 47.1 (encouraging concise opinions addressing only those issues "necessary to final disposition of the appeal"); *Acevedo v. State*, 255 S.W.3d 162, 172 (Tex. App.—San Antonio 2008, pet. ref'd).

**B.  Voluntariness of Consent to Search**

The Fourth Amendment protects a suspect from warrantless searches and seizures.  U.S. CONST. amend. IV.   However, voluntary consent serves as an exception to the warrant requirement.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *State v. Ibarra*, 953 S.W.2d 242, 243 (Tex. Crim. App. 1997) (en banc).  We examine the voluntariness of a statement based on the totality of the circumstances.  *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007).  Consent may "not be coerced, by explicit or implicit means, by implied threat or covert force."  *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) (quoting *Schneckloth*, 412 U.S. at 228).  If the voluntariness of the consent is challenged at trial, "the State must prove the voluntariness of a consent to search by clear and convincing evidence."  *Harrison v. State*, 205 S.W.3d 549, 552 (Tex. Crim. App. 2006) (quoting *Ibarra*, 953 S.W.2d at 245).

For consent to be valid, it must be given freely, unequivocally, and without duress or coercion.  *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991).  The ultimate question with regard to coercion is whether the defendant's "will was overborne" by the officer's actions. *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997).  At the suppression hearing, Detective Timm Angell testified that Garza was under arrest when he interviewed Garza on July 14, 2006.   The audio recording of the interview confirms Detective Angell read Garza his *Miranda* rights and Garza indicated he understood those rights.  Additionally, Detective Angell specifically informed Garza that the DNA sample could be used against him.  On the recording, Garza consents to providing a sample of his DNA.  Garza alleges Detective Angell coerced him into signing the consent form by threatening to turn the case over to the federal government.

We, therefore, focus on whether Detective Angell's behavior was such as to overbear Garza's will.  *See Creager,* 952 S.W.2d at 856.  Detective Angell *did* inform Garza that he was

also suspected in a carjacking—an offense prosecuted by the federal government. However, a careful review of the record fails to yield *any* threats by the detective. In light of the totality of the circumstances, we conclude Garza knowingly, intelligently, and voluntarily consented to the giving of the DNA sample. Accordingly, the trial court did not err in denying Garza's motion to suppress.

SUFFICIENCY OF THE EVIDENCE

Lastly, Garza asserts the evidence was legally and factually insufficient.

## A. Standard of Review

When reviewing legal sufficiency, an appellate court examines whether, after viewing all the evidence in the light most favorable to the prosecution, *any* rational trier of fact would have found the essential elements of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). When considering a factual sufficiency challenge, an appellate court views all of the evidence in a neutral light and only sets aside the verdict if the evidence is so weak that the verdict is "clearly wrong and manifestly unjust;" or if the verdict is "against the great weight and preponderance of the evidence." *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

## B. Murder

A person commits murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(a)(1) (Vernon 2003 & Supp. 2008). Additionally, a person commits murder if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *Id*. § 19.02(a)(2).

*1. Reliance on* Hicks v. State

Relying on *Hicks v. State*, 860 S.W.2d 419, 424 (Tex. Crim. App. 1993) and its progeny, Garza argues that the evidence is insufficient to sustain his conviction due to the State's failure to prove that the instrument of death was unknown to the grand jury. *Hicks* requires the grand jury to use due diligence in attempting to ascertain the manner or means of death. *Id.* Garza asserts the testimony at trial suggested that a towel might have been used to strangle Julie and, thus, the State failed to meet its burden.

However, the Court of Criminal Appeals has expressly disavowed *Hick*'s "due diligence" rule. *See Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999); *see also Fagan v. State*, 89 S.W.3d 245, 249 (Tex. App.—Texarkana 2002, pet. ref'd) ("[T]he rule requiring the state to show that the grand jury exercised due diligence in determining the instrumentality of the offense is no longer relevant to our analysis."). A non-essential element of the charge, such as an allegation that the object used to cause injury was unknown to the grand jury, may properly be excluded from a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

*2. Evidence Before the Jury*

Virginia Gonzales, Julie's best friend, testified that Julie previously asked Garza to move out of the residence and for a divorce. Julie expressed a fear of Garza and, therefore, would call Virginia every day when she got off work. On the night in question because Julie failed to answer her phone, Virginia became concerned and stopped by Julie's mobile home. When Julie failed to respond to Virginia's knocking and calling of her name, Virginia called 911.

Garza arrived while Virginia was present at Julie's home. Garza told Virginia that Julie was not home, however, Virginia persisted, requesting permission to enter the residence. Garza eventually agreed and Virginia searched the master bedroom, master bathroom, and living room where she discovered Julie's purse on the couch. Garza allowed Virginia to search every room of the home except the bathroom, claiming he was "doing drugs in there." When Virginia went to meet the police at the entrance of the mobile home park, Garza left the residence before the police arrived. Upon arrival, the police found Julie's body in the bathroom.

At trial, the pathologist testified Julie's death was caused by homicidal asphyxia, or lack of oxygen to the brain, caused by strangulation, suffocation, or some combination of the two. In addition, a subsequent search of the residence produced a blood-stained men's shirt in the master bedroom. Cuttings from the shirt revealed blood consistent with Julie's DNA and cuttings from the armpit of the same shirt showed DNA consistent with that of Garza.

Based on a review of "the evidence in the light most favorable to the prosecution," we conclude a rational jury could find beyond a reasonable doubt that Garza murdered Julie. *See Jackson*, 443 U.S. at 319. Thus, the evidence is legally sufficient to support the conviction. Additionally, after considering all of the evidence in a neutral light, we cannot say that the verdict is against the great weight and preponderance of the evidence. *Watson*, 204 S.W. 3d at 417. The jury was free to accept or reject the testimony of any witness, and we remain mindful of such findings. *Id.* at 414 (citing *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). The evidence is, therefore, factually sufficient to support the conviction.

## CONCLUSION

We hold that the trial court did not err in denying Garza's motions to suppress based on Garza's lack of standing and a valid consent to search. Further, we hold that the evidence is both

legally and factually sufficient to support the murder conviction. We, therefore, affirm the judgment of the trial court.

Rebecca Simmons, Justice

DO NOT PUBLISH