

# NUMBER 13-13-00583-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**TRAVIS O'NEAL BLUNTSON,**                                   **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                   **Appellee.**

---

### On appeal from the 329th District Court
### of Wharton County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion by Justice Benavides

Appellant, Travis O'Neal Bluntson, was convicted of one count of manufacture or delivery of four or more grams but less than 200 grams of a controlled substance in penalty group one, s*ee* TEX. HEALTH & SAFETY CODE § 481.112 (d) (West, Westlaw through 2013 3d C.S.); one count of manufacture or delivery of less than 28 grams of a

controlled substance in penalty group three or four, s*ee id.* at § 481.114 (b) (West, Westlaw through 2013 3d C.S.); one count of manufacture or delivery of one or more grams but less than four grams of a controlled substance in penalty group one, s*ee id.* at § 481.112 (c) (West, Westlaw through 2013 3d C.S.); one count of possession of a controlled substance of one or more grams but less than four grams of a controlled substance in penalty group one, *see id.* at § 481.115 (c) (West, Westlaw through 2013 3d C.S.); one count of manufacture or delivery of 400 or more grams of a controlled substance in penalty group three or four, *see id.* at § 481.114 (f) (West, Westlaw through 2013 3d C.S.); and one count of manufacture or delivery of 200 or more grams but less than 400 grams of a controlled substance in penalty group three or four. *See id. at* § 481.114 (e) (West, Westlaw through 2013 3d C.S.).   We affirm.[1]

## I.   BACKGROUND

On May 13, 2012, Bluntson was wanted in connection with an attempted capital murder in Austin County, Texas.[2]   Texas Ranger David Chauvin contacted Tarsha Scott, Bluntson's girlfriend and mother of his son, in an attempt to find Bluntson, and to search her home for evidence related to the alleged crime in Austin County.

On the morning of May 13th, Ranger Chauvin made initial contact with Scott at her place of employment.   During that meeting, Scott preliminarily agreed to allow Ranger Chauvin to search her residence for Bluntson, but denied any knowledge of

---

[1] On cross-appeal, the State contends the trial court erred in giving a jury instruction concerning the "ultimate user exemption." *See* TEX. HEALTH & SAFETY CODE § 481.062 (West, Westlaw through 2013 3d C.S.). We need not address the State's cross appeal as Bluntson is granted no relief. *See* Pfeiffer v. State, 363 S.W.3d 594, 601 (Tex. Crim. App. 2012), *see also Armstrong v. State*, 805 S.W.2d 791, 794 (Tex. Crim. App. 1991).

[2] This case is unrelated to this appeal, and is not addressed.

Bluntson's whereabouts.   Scott agreed to meet with Ranger Chauvin after work that day.   About an hour after Ranger Chauvin left Scott's workplace, Scott left work and telephoned Ranger Chauvin to inform him that she had not been entirely forthcoming with regard to Bluntson's whereabouts and admitted she had dropped Bluntson off in Wharton that morning.   Ranger Chauvin testified that Scott admitted to being scared during the phone call.   Ranger Chauvin testified he "wasn't happy" about Scott lying to him. However, Ranger Chauvin testified that as a law enforcement officer, he was accustomed to such behavior.   After receiving this information, with the assistance of the Wharton County Sheriff's Office and two additional Texas Rangers, Ranger Chauvin arrested Bluntson at approximately 12:07 p.m. Later that afternoon, Scott drove to the Wharton County Sheriff's Office to meet with Ranger Chauvin.   At that time, she filled out a standardized form consenting to the search of her residence. Scott then accompanied Ranger Chauvin to her home, where she assisted the search. Scott identified several locations in the house where Bluntson kept his belongings.   During the search, Ranger Chauvin found and seized various prescription drugs, crack cocaine, cell phone bills, and 9 millimeter Luger ammunition. As a result, Bluntson was indicted for six counts of possession of a controlled substance with intent to deliver.   Bluntson moved to suppress the evidence seized during the search of Scott's home on the ground that, although Scott had consented to the search verbally and in writing, her consent was not voluntarily given.

A pretrial hearing on the motion was conducted on October 23, 2013, where both Scott and Ranger Chauvin testified. During the suppression hearing, Scott testified that Bluntson paid the rent, spent "several days at a time" at the home, was "in and out", and

3

had a key to the property.

At the conclusion of the hearing, the trial court denied Bluntson's motion to suppress. After the jury found Bluntson guilty, he was given four life sentences, a sentence of 20 years, and a sentence of two years, all to run concurrently. This appeal followed.

## II. DISCUSSION

Bluntson contends the seized evidence should have been suppressed because Scott's consent was not voluntarily given, and the trial court erred in denying his motion to suppress.

### a. Standard of Review and Applicable Law

The appropriate standard for reviewing a trial court's ruling on a motion to suppress evidence was articulated in *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997); *see also Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). In *Guzman*, the Court indicated that it would apply a bifurcated standard of review, giving "almost total deference to a trial court's determination of historical facts" and reviewing de novo the court's application of the law of search and seizure. *Guzman*, 955 S.W2d at 88–89.

The validity of an alleged consent is a question of fact, and the State must prove voluntary consent by clear and convincing evidence. *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011). Critical to a consent analysis is that the fact finder must consider the totality of the circumstances in order to determine whether consent was given voluntarily. *Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011) (citing Schneckloth, 412 U.S. at 233, 93 S.Ct. 2041); Harrison v. State, 205 S.W.3d 549,

552 (Tex. Crim. App. 2006). "The trial judge must conduct a careful sifting and balancing of the unique facts and circumstances of each case in deciding whether a particular consent to search was voluntary or coerced." *Id*. Accordingly, it follows that, because the fact finder must consider all of the evidence presented, no one statement or action should automatically amount to coercion such that consent is involuntary—it must be considered in the totality. *Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012).

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). "In a motion to suppress hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). "Accordingly, the judge may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted." *Id.* "This is so because it is the trial court that observes first hand the demeanor and appearance of a witness, as opposed to an appellate court which can only read an impersonal record." *Id.*

Because issues of consent are necessarily fact intensive, a trial court's finding of voluntariness must be accepted on appeal unless it is clearly erroneous. *Meekins*, 340 S.W.3d at 460.

### b. Analysis

The United States and Texas Constitutions protect the people against all unreasonable seizures and searches. *See* U.S. CONST. amend. IV, TEX. CONST. art. I, § 9. A warrantless police entry into a residence is presumed unreasonable unless

the entry falls within one of a well-defined group of exceptions. *Limon v. State*, 340 S.W.3d 753, 756 (Tex. Crim. App. 2011) Voluntary consent is one such exception. *Id.*

As a preliminary matter, the State does not contest Bluntson's standing in this case.[3] Nor does Bluntson question Scott's authority to consent to the search of the residence. S*ee id.* ("Consent to entry from one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared. Common authority is derived from the third party's use of the property rather than his legal property interest.").

Bluntson does argue, however, that even though Scott had the authority to consent to the search of the residence, her consent was not given voluntarily as required by law. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973). "When the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." *Id.* "[W]e do not ask whether the consent would have been given 'but-for' the police actions or inquiries. Under this view, 'virtually no statement would be voluntary because very few people give incriminating statements in the absence of official action of some kind.'" *Reasor v. State*, 12 S.W.3d 813, 817-18 (Tex. Crim. App. 2000) (quoting *Schneckloth*, 412 U.S. at 224). Rather, the totality of the circumstances must be assessed in determining whether consent was voluntarily given. *Id.* at 818.

Bluntson argues that Ranger Chauvin intimidated Scott by contacting her at her

---

[3] See *Villareal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) ("An accused has standing, under both constitutional provisions, to challenge the admission of evidence obtained by a governmental intrusion only if he had a legitimate expectation of privacy in the place invaded.").

workplace, and that, it can be "reasonably inferred that [Scott] was afraid that she might lose her job." Additionally, Bluntson contends Scott's fear of prosecution and, therefore, fear of losing her son, factored into her decision to grant consent. We disagree with both arguments.

In support of his argument, Bluntson cites portions of the following cross-examination of Scott during the pre-trial hearing:

| [Defense Counsel]. | If you're charged with – if you were charged with these same offenses and sent off to prison along with the possibility of Mr. Bluntson being sent off to prison, your son then would be without parents, correct? |
|---|---|
| [Scott]. | Yes. |
| Q. | Did that play a factor in you signing the consent form that day? |
| A. | Well. I felt like I needed to cooperate with them |
| Q. | Or else what? |
| A. | I mean, I wanted to cooperate because I don't want to get into trouble, you know, so I'm going to cooperate with them |
| Q. | Okay, so, in an effort to avoid getting yourself into trouble, you agreed to sign this consent form, correct? |
| A. | Well, yes. |
| Q. | Did you feel like at any moment if you didn't cooperate you, yourself, could have been charged and arrested for the same offense? |
| A. | Yes. |

During his testimony at the suppression hearing, Ranger Chauvin stated

that Scott may have committed a crime when she lied to him with regard to Bluntson's whereabouts. However, Scott testified as follows:

[The State].                    Ms. Scott, during cross-examination there were some questions about whether you were afraid or whether you were scared. What I'd like to ask you about is whether you have any specific recollection of certain things. For example, do you have any —do you specifically recall Ranger Chauvin ever threatening you with criminal charges?

[Scott].                    No.

Q.                    Do you specifically recall ever being threatened to be sent to prison?

A.                    No.

Q.                    Did anybody ever say anything about leaving your children without parents?

A.                    No.

Q.                    How would you describe Ranger Chauvin's demeanor throughout your interaction with him?

A.                    He's a nice man. He wasn't mean or anything towards me.

Bluntson asks us to subscribe to a very narrow definition of voluntary, that 'but for' Ranger Chauvin's contact with and questioning of Scott, she would not have given consent. Therefore, Bluntson argues, any purported consent given by Scott could not have been given freely or voluntarily. In *Reasor* the court of criminal appeals explicitly rejected that notion. *See Reasor*, 12 S.W.3d at 817-18.

However, even assuming Bluntson's contentions are true, and that Scott felt compelled in some way, no one statement or action can automatically amount to

coercion such that consent is involuntary. *See Fienen*, 390 S.W.3d at 333. Instead, the totality of the evidence presented not only outweighs, but controverts the testimony cited in Bluntson's argument. *See id.* We defer to the trial court's findings as it was in the best position to determine Scott's credibility and the totality of the circumstances in determining whether her consent was given voluntarily. *See Ross*, 32 S.W.3d at 856.

First, when asked by Bluntson's trial counsel if she felt compelled to sign the consent form, Scott testified:

> I don't know how I felt when I signed it. I was just — you know, I just felt like I needed to, you know, do what they asked —you know, to —what's the word I'm trying to say? I'm sorry — to agree with them, so, you know, cooperate with them. I feel like I needed to do that, *that would have been the right thing to do.*

(emphasis added). While Scott did not explicitly reject the notion that she felt compelled to give consent, she does so implicitly by providing an alternative motive, that it was the "right thing to do."

Second, consent given after being warned of the right to refuse is some evidence that consent was voluntary. *Martinez v. State,* 17 S.W.3d at 682 (Tex. Crim. App. 2000) (mother gave voluntary consent for police to search her adult son's bedroom in her home). By signing the consent form, Scott acknowledged she had the right to refuse the search, and to refuse to sign the form. By signing, Scott additionally acknowledged that no "promises, threats, force, or physical or mental coercion" of any kind were used to gain her consent.

Third, testimony by law enforcement officers that no coercion was involved in obtaining the consent is also evidence of the consent's voluntary nature. *See id.* Not only did Ranger Chauvin testify that he did not coerce or promise Scott anything for her

consent, Scott herself denied that Ranger Chauvin ever threatened her, and even stated that he was "a nice man".

Accordingly, based upon our review of the record in the light most favorable to the trial court's ruling, We conclude that the trial court's finding that Scott's consent was voluntarily given was not clearly erroneous based upon the totality of the circumstances, and Scott's testimony. We overrule Bluntson's sole issue.

### III. Conclusion

For the reasons above, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
Tex. R. App. P. 47.2 (b).

Delivered and filed the
26th day of June, 2014.