# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00249-CR

**The State of Texas, Appellant**

**v.**

**Chet M. Lofgren, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY
### NO. 98-5482-1, HONORABLE KEVIN HENDERSON, JUDGE PRESIDING

Appellee Chet M. Lofgren stands accused of making an alcoholic beverage available to a minor. *See* Tex. Alco. Bev. Code Ann. § 106.06 (West Supp. 2000). Lofgren filed a motion to suppress evidence, which was granted following a hearing. The State appeals. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp. 2000). We will reverse the trial court's order.

In late summer 1998, Chief Deborah Brown of the Southwestern University Police Department received reports of underage drinking at the weekly "study breaks" held at the Kappa Sigma fraternity house on the university campus. These gatherings took place each Wednesday night, beginning at about 10:30 p.m. and lasting until about midnight. Brown said her understanding was that during the study breaks, "the house was open for students to come in and out. There might be music there, there may not." Chief Brown mentioned these reports to Agent Randy Brown of the

Texas Alcoholic Beverage Commission during a routine meeting. It was agreed after further discussion that Agent Brown, working with officers from the university and Georgetown police departments, would investigate possible violations of the alcoholic beverage laws at the fraternity house.

Chief Brown testified that she did not expect this investigation to uncover violations of the alcoholic beverage laws. She explained that since receiving the reports of underage drinking, she and several other persons from the university, including the Kappa Sigma chapter vice-president, had attended a weekend seminar "about the zero tolerance laws in Texas." At this seminar, there was a workshop "to redo and redefine our policies through the school so that we could support the alcohol laws and give correct and precise procedures on how to handle alcohol inside parties." Among other university regulations, campus organizations were required to obtain a permit from the school in order to serve alcohol.

Two Georgetown police officers, Ronald Price and Lisa Lauer, went to the September 9, 1998, study break dressed in clothing appropriate for college students. They were met at the entrance to the Kappa Sigma house by two men sitting beside a fifty-five gallon barrel. On the barrel was a pad of paper and a pen. Price testified, "I asked if I could go in. And they said just sign the sheet of paper if you're over 21." No proof of age or identification was requested. Price and Lauer signed and entered the house. Inside, the officers found themselves in "an open foyer type area." About forty people were present, most of whom were drinking and appeared to be under the legal drinking age. To the officers' right was a bar, where two women were pouring cans of beer into plastic cups. On the bar was a bowl in which monetary contributions could be made. As Price and

Lauer made their way toward the bar, they were met by the chapter vice-president, who asked them their business. They told him they were there to meet a friend. Apparently not satisfied with this answer, the man asked them to leave, which they did.

One week later, another Georgetown officer, Rene Alvarez, was sent to the Kappa Sigma house. Alvarez was twenty-three and, according to the testimony, looked young for his age. He was wearing shorts, a tee shirt, and a baseball cap. Alvarez encountered three men at the door. After a brief "casual conversation" about "going in and if there was a party and basically just . . . about the school," he was "welcomed" into the house. Alvarez did not see a guest list or sign-in sheet. Alvarez went to the bar, placed a dollar in the contribution bowl, and was served a beer. Looking around, he saw many persons who appeared to be under the age of twenty-one drinking beer. After about fifteen minutes, Alvarez gave a signal to officers outside by means of a microphone he was wearing. Thirteen officers entered the Kappa Sigma house and, after checking the identifications of the more than one hundred persons present, issued forty-nine citations to minors in possession of alcoholic beverages. Appellee Lofgren, the Kappa Sigma chapter president, was charged with making alcohol available to minors.

In his motion to suppress, Lofgren urged that the warrantless entry of the officers into the Kappa Sigma house on September 16 violated the Fourth and Fourteenth Amendments to the United States Constitution and article I, section 9 of the Texas Constitution.[1] A defendant who seeks to suppress evidence on Fourth Amendment grounds must establish his standing to do so, that is,

---

[1] The parties have not made separate arguments under the two constitutions. We will assume, as they do, that the constitutional provisions are equivalent under the circumstances of this cause.

must show that he had a legitimate expectation of privacy in the premises searched. *Rakas v. Illinois*, 439 U.S. 128, 139-40 (1978); *State v. Klima*, 934 S.W.2d 109, 111 (Tex. Crim. App. 1996); *Wilson v. State*, 692 S.W.2d 661, 669 (Tex. Crim. App. 1984). Other than his status as chapter president, the only fact we know about Lofgren is that he was present at the house on the night of September 16. The State did not contest Lofgren's standing below and does not raise the issue on appeal.

In granting the motion to suppress, the court found that the police had probable cause to believe that unlawful underage drinking was taking place at the Kappa Sigma house based on the information previously received by Chief Brown and on the observations of the two officers on September 9. The court ruled that there was no justification for the failure to obtain a search warrant before Alvarez entered the fraternity house on September 16. The court stated, "I don't buy your argument that the State didn't need a warrant in this case. I think the law is well settled that exigent circumstances mean circumstances in the nature of an emergency." The court added, "They knew perfectly well what was going on in there. They could have sworn out a warrant six days before then. I'll grant the motion to suppress." In reviewing the court's ruling granting the motion to suppress, we defer to its factual determinations but review de novo the court's application of the law to the facts. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

The State contends that a warrant was not required and the motion to suppress should not have been granted because, among other reasons, Alvarez had consent to enter the fraternity house. We agree. A warrantless search conducted pursuant to a valid consent is constitutionally permissible. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *Paprskar v. State*, 484 S.W.2d 731, 737 (Tex. Crim. App. 1972). It was undisputed that the persons at the door of the fraternity

4

house on September 16 consented to Alvarez's entry. There is no evidence that their consent was involuntary, that is, was the product of duress or coercion. *See Schneckloth*, 412 U.S. at 248. The Fourth Amendment was not violated because Alvarez was acting in an undercover capacity. *See Lewis v. United States*, 385 U.S. 206, 208-10 (1966). Alvarez saw and did nothing inside the house that was not contemplated when he was invited to enter. Upon seeing what he had a reason to believe was underage drinking taking place, Alvarez was entitled to summon the other officers for assistance. *See Williams v. State*, 937 S.W.2d 23, 26-27 (Tex. App.—Houston [1st. Dist.] 1996, pet. ref'd).

No Fourth Amendment violation is shown. The county court at law's order granting Lofgren's motion to suppress is reversed and the cause is remanded for further proceedings.

_

Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Reversed and Remanded

Filed:   May 10, 2001

Publish

5