Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# OPINION

Nos. 04-08-00238-CR & 04-08-00239-CR

Heriberto Arias **VALTIERRA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Kendall County, Texas
Trial Court No. 4613
Honorable Stephen B. Ables, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:       Sandee Bryan Marion, Justice
               Phylis J. Speedlin, Justice
               Marialyn Barnard, Justice

Delivered and Filed:   May 27, 2009

REVERSED AND REMANDED

The appeals stem from the denial of a motion to suppress challenging evidence seized after

officers entered and searched an apartment. In four issues on appeal, Heriberto Valtierra contends

the trial court erred in denying his motion to suppress because: (1) the officers did not have consent

to enter the apartment, proceed down the hallway toward the bathroom, or search the apartment; (2)

the officers did not have evidence to justify a protective sweep or evidence of exigent circumstances

to conduct a warrantless search; (3) the evidence seized was not located in plain view; and (4) the subsequent search warrant lacked probable cause because it was based on a warrantless entry. We reverse the judgments of the trial court and remand the causes for further proceedings.

## BACKGROUND

Officers Pedro Moncada and John Rutledge received information from Officer Steve Perez that a thirteen-year-old female runaway was living at an apartment in Boerne, Texas. Officer Moncada informed Officers Rutledge and Perez that he recalled seeing a young female named Erica at that apartment when he had contacted two male subjects in that apartment the prior week. Based on the information, Officers Moncada and Rutledge went to the apartment to conduct a "knock and talk."

When the officers arrived, Officer Moncada knocked on the door, and Heriberto answered. At the hearing on the motion to suppress, Officer Moncada testified that he remained outside the door with Officer Rutledge behind him when Heriberto answered. Officer Moncada asked Heriberto if he could come inside and speak to Erica. Officer Moncada testified that Heriberto consented to the officers' entry. Officer Moncada testified that neither Officer Rutledge nor he broke the plane of the door until they received verbal permission to enter the premises. The conversation, which was in Spanish, was recorded by a body microphone Officer Moncada was wearing.[1]

Officer Moncada testified that after the officers entered the apartment, another male, later identified as Abilino Ortiz, walked out of a bedroom located on the left side of the hallway (the

_____

[1] Because the entire conversation between Officer Moncada and Heriberto was in Spanish, an interpreter was required to file a sworn and certified transcription and English translation of the first three minutes of the audio recording. During the motion to suppress hearing, Heriberto objected to part of the written translation as inaccurate. Furthermore, a portion of the recording is unintelligible and is the focus of a significant portion of the hearing on the motion to suppress.

"west bedroom") into the living room where Officers Moncada and Rutledge were standing. Officer Moncada testified that he then asked Heriberto where Erica was and whether he could speak to her. According to Officer Moncada's testimony, Heriberto said Erica was in the bathroom taking a shower and Officer Moncada could go speak to her. The record, however, reflects that when Officer Moncada asked whether he could speak to Erica, Herbierto replied, "Ah, yes. She'll come out in a minute. Erica they're calling you."

As Officer Moncada walked toward the bathroom, he passed the west bedroom and saw two males, later identified as Eduardo Valtierra and Francisco Calderon, throw some items under the bed. He then called Officer Rutledge to his location, and both officers directed the two men to step out of the west bedroom and go sit in the living room. Officer Rutledge subsequently conducted a "protective sweep" of the west bedroom, where he found evidence of drug paraphernalia. Based on Officer Rutledge's discovery, the officers obtained a search warrant ultimately resulting in the discovery of narcotics, drug paraphernalia, and a stolen firearm.

Heriberto Valtierra was indicted for the offense of possession of a controlled substance in penalty group I, specifically cocaine in an amount greater than four grams but less than two hundred grams, with the intent to deliver. On October 5, 2006, Heriberto pled not guilty. On July 30, 2007 and August 6, 2007, the trial court held two pretrial hearings on Heriberto's motion to suppress the search of Heriberto's home, Heriberto's arrest, and the search warrant. On January 10, 2008, the trial court denied Heriberto's motion to suppress, and on March 17, 2008, the trial court entered written findings of facts and conclusions of law. Heriberto then pled guilty to possession of a controlled substance pursuant to a plea bargain agreement on February 7, 2008 and was sentenced to five years imprisonment. This appeal followed.

**STANDARD OF REVIEW**

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *See Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Under a bifurcated standard of review, we afford almost total deference to a trial court's determination of historical facts. *See Guzman*, 955 S.W.2d at 89. "[T]he trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). The trial court is entitled to believe or disbelieve all or part of the witness's testimony, even if the testimony is uncontroverted, because the trial court has the opportunity to observe the witness's demeanor and appearance. *Id*.

If the trial court makes express findings of fact, we view the evidence in the light most favorable to the trial court's ruling and determine whether the evidence supports these factual findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When findings of fact are not entered, we "must view the evidence 'in the light most favorable to the trial court's ruling' and 'assume the trial court made implied findings of fact that support its ruling as long as those findings are supported by the record.'" *See Harrison v. State*, 205 S.W.3d 549, 552 (Tex. Crim. App. 2006) (quoting *Guzman*, 955 S.W.2d at 89); *see also Kelly*, 204 S.W.3d at 819.

In addition, we review a trial court's application of the law of search and seizure to the facts de novo. *See Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); *Kelly,* 204 S.W.3d at 818. We will sustain the trial court's ruling if the ruling is "reasonably supported by the record and is correct on any theory of law applicable to the case." *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.

Crim. App. 2006). We will reverse only if the trial court's ruling is outside the zone of reasonable disagreement. *Id*.

**DISCUSSION**

**A. Consent**

    1. Consent to Enter the Residence

In his first issue on appeal, Heriberto contends the trial court erred in denying his motion to suppress because the officers did not have consent to enter the apartment, proceed down the hallway toward the bathroom, or search the apartment. According to Heriberto, Officer Moncada entered the apartment before he requested permission by sticking his head about four inches inside the apartment doorway and calling out for Erica. Heriberto further contends that when Officer Moncada walked into the house and asked for Erica, he began simultaneously calling out for Erica and walking down the hallway toward the bathroom after Heriberto explained that Erica was taking a shower. Heriberto also contends the audio recording and its translation does not provide any evidence of Officer Moncada requesting permission to enter or proceed toward the bathroom.

We presume a warrantless police entry into an individual's home is unreasonable unless the entry falls within an exception to the warrant requirement. *Johnson v. State*, 226 S.W.3d 439, 443 (Tex. Crim. App. 2007). Voluntary consent is one of the exceptions to the warrant requirement. *Id*. Whether consent was voluntary is a question of fact, and the State bears the burden of proving by clear and convincing evidence that the consent obtained was voluntary. *Id*.; *see also Gutierrez v. State*, 221 S.W.3d 680, 686 (Tex. Crim. App. 2007). To determine whether consent was voluntary, trial courts evaluate the totality of the circumstances by looking at the circumstances leading up to the search, the reaction of the defendant to pressure, and any other relevant factors. *Reasor v. State*,

12 S.W.3d 813, 818 (Tex. Crim. App. 2000). Such relevant factors include "the youth of the accused, the education of the accused, the intelligence of the accused, the constitutional advice given to the accused, the length of the detention, the repetitiveness of the questioning, and the use of physical punishment." *Id*. Consent is valid if it is given freely, unequivocally, and without duress or coercion. *Id.* at 817. We examine a finding of voluntary consent under an abuse of discretion standard. *See Johnson*, 226 S.W.3d at 443.

In the case before us, the issue of consent to enter the premises and proceed further into the apartment was heavily contested during the motion to suppress hearings. At the conclusion of the hearings, the trial judge stated that he would carry his decision until August 27, 2007. It was not until January 10, 2008, however, that the trial court denied the motion to suppress. On March 17, 2008, the trial court entered findings of fact and conclusions of law and found that "Officer Moncada received oral consent to enter the apartment from Heriberto Valtierra." Both the translated transcript of the audio recording from the body microphone that Officer Moncada was wearing and part of the testimony reflect that Officer Moncada asked Heriberto whether he could enter the apartment and Heriberto answered yes. Officer Moncada further testified that he did not break the plane of the doorway until Heriberto granted him permission to enter. Accordingly, the trial court did not abuse its discretion in finding that the evidence presented by the State establishes by clear and convincing evidence that Officer Moncada obtained Heriberto's voluntary consent before walking into the apartment. *Johnson*, 226 S.W.3d at 443; *Gutierrez*, 221 S.W.3d at 686.

2. Consent to Proceed Further into the Residence

An accused's consent to admit a police officer into his residence, however, does not infer an accused's consent to allow that officer to further proceed into the residence or consent to search the

residence. *See Alberti v. State*, 495 S.W.2d 236, 237 (Tex. Crim. App. 1973); *LeBlanc v. State*, 424 S.W.2d 434, 436 (Tex. Crim. App. 1968). Once permitted into a residence, a police officer may only take action in accordance with the purpose in which he was invited or allowed into the residence. *See Alberti*, 495 S.W.2d at 237; *LeBlanc*, 424 S.W.2d at 436. Accordingly, we must also address whether the officers had consent to further proceed into the apartment and walk down the hallway toward the bathroom.

Here, the trial court did not enter an express finding of fact that the officers had permission to proceed further into the apartment or walk down the hallway toward the bathroom. If this court can assume additional implied findings when a trial court enters express findings, we must determine whether the record contains evidence to support an implied finding of consent to proceed down the hallway toward the bathroom. *See Harrison*, 205 S.W.3d at 552.

Although we generally afford almost total deference to a trial court's determination of historical facts, in *Carmouche v. State*, the Texas Court of Criminal Appeals declined to defer to a trial court's implied finding of consent. *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000). In that case, the defendant was arrested for possession of a controlled substance after being frisked by an officer at a traffic stop. *Id*. at 326-27. At trial, the officer testified that he walked up to the defendant and asked him if he could search him and that the defendant threw up his hands and verbally consented to be frisked. *Id*. at 331. The videotape from the patrol car's camera, however, did not support the officer's testimony that he received permission to frisk the defendant because the videotape showed a different sequence of events. *Id*. The videotape showed that the officer's request to pat down the defendant occurred after the defendant was ordered to turn around and face

the car and as the officer was reaching for the appellant to frisk him. *Id*. at 332. The Court of

Criminal Appeals stated:

> In the unique circumstances of this case, however, we decline to give "almost total deference" to the trial court's implicit findings under which the Court of Appeals found consent. First, we note that the trial court seems to have predicated its decision to admit the evidence on a finding of probable cause rather than on consent. Second, the nature of the evidence presented in the videotape does not pivot "on an evaluation of credibility and demeanor." Rather, the videotape presents indisputable visual evidence contradicting essential portions of Williams'[s] testimony. In these narrow circumstances, we cannot blind ourselves to the videotape evidence simply because Williams'[s] testimony may, by itself, be read to support the Court of Appeals'[s] holding.

*Id*. at 332.

Similarly, the record in this case does not support an implied finding that the State proved

by clear and convincing evidence that Heriberto gave consent for Officer Moncada to proceed down

the hallway toward the bathroom. Officer Moncada testified that he asked Heriberto whether he

could go down the hallway and talk to Erica and that Heriberto gave him permission to go down the

hallway; however, the transcription of the audio recording from Officer Moncada's body microphone

does not reflect this exchange. Instead, the transcript reflects that after the officers received

permission to enter the apartment, the following exchange occurred:

> POLICE OFFICER [Officer Moncada]: No, that's fine, that's fine, that's fine. It's because we are looking for Erica. Where's Erica?
> MALE VOICE 1 [Heriberto]: Over there, she's over there, inside.
> POLICE OFFICER: May I talk to her, please?
> MALE VOICE 1: Ah, yes. She'll come out in a minute. Erica, they're calling you.

Nowhere in the transcript does Officer Moncada ask Heriberto for permission to proceed down the

hallway. Instead, Heriberto's comment that "She'll come out in a minute." must be read as an

indication for the officers to wait for her to come out of the bathroom. Like the court in *Carmouche*, we cannot ignore the transcript simply because Officer Moncada's testimony alone may be read to support the trial court's possible implied finding. *See id.* Accordingly, even after viewing the evidence in the light most favorable to the trial court's ruling, we cannot assume the trial court made an implied finding that Heriberto consented for Officer Moncada to go down the hallway toward the bathroom. *See Harrison*, 205 S.W.3d at 552.

## B. Protective Sweep

Because the record does not support a finding that Heriberto consented for the officers to proceed down the hallway, we must determine whether another exception to the warrant requirement enabled the officers to lawfully proceed down the hallway toward the bathroom. *See Lewis v. State*, 664 S.W.2d 345, 347 (Tex. Crim. App. 1984) (holding that a suppression ruling will be sustained so long as it can be upheld on any valid theory regardless of the State's arguments on appeal). We next consider whether the officer's movement down the hallway is sustainable under a protective sweep analysis. "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Maryland v. Buie*, 494 U.S. 325, 327 (1994); *see also Reasor,* 12 S.W.3d at 815-16. To conduct a protective sweep, an officer must possess a reasonable belief based on specific, articulable facts, which taken together with rational inferences from those facts, reasonably warrants the officer to believe the area to be swept may harbor an individual posing a danger. *Buie*, 494 U.S. at 327; *Reasor,* 12 S.W.3d at 816. The sweep may only last long enough to "dispel the reasonable suspicion of danger." *Buie*, 494 U.S. at 335-36.

The trial court in the instant case entered the following conclusion of law:

9. Once the officers saw unknown individuals emerging from the general direction of the person whom the officers thought to be the runaway they were looking for, the officers were permitted to move across the living room and down the hallway to conduct a protective sweep and a weapon search for officer safety.

While an officer can follow suspects and sweep residences for officer safety, the officer must be able to articulate a reason for doing so in the interest of the officer's safety. *See Reasor*, 12 S.W.3d at 817. At the time Officer Moncada proceeded down the hallway, the following was known to the officers. The officers entered the apartment, obtained verbal confirmation that Erica was at the apartment, and asked to speak to Erica. Ortiz unexpectedly walked out of a bedroom and complied with Officer Moncada's instruction to sit down in the living room. In addition to these facts, Officer Moncada did not articulate a reason for proceeding down the hallway in the interest of the officer's safety during his testimony. *See id.*

To the contrary, the testimony of both the officers suggests that the only protective sweep of the apartment was completed *after* Officer Moncada proceeded down the hallway and *after* the officers were outnumbered. The testimony does not suggest that the officers' actions of proceeding down the hallway was actually part of a protective sweep. Instead, Officer Moncada stated that his reason for walking down the hallway was for "[c]ontacting the possible runaway," rather than for his safety. Officer Moncada also testified that he did not feel in fear at the beginning. In addition, Officer Rutledge repeatedly testified that he did not believe his "safety was in jeopardy" or that he "may be in danger." Officer Rutledge testified that other than the mere number of individuals in the apartment, there was nothing about the individuals to make him believe that his "safety was in jeopardy" or he "may be in danger."

While we afford almost total deference to the trial court's determination of historical facts that are supported by the record, the trial court abused its discretion by concluding that Officer Moncada possessed a reasonable belief based on specific, articulable facts to reasonably warrant him to believe the apartment may harbor an individual posing a danger. *See Buie*, 494 U.S. at 327; *Reasor,* 12 S.W.3d at 817. Accordingly, the officers' movement down the hallway cannot be justified as a protective sweep.

## C. Exigent Circumstances

We must next determine whether the officers lawfully proceeded down the hallway toward the bathroom under the exigency exception to the warrant requirement. Under the exigency exception, the State bears the burden of proof to show: (1) there was probable cause to enter and search the residence at the time, and (2) that obtaining a search warrant was impracticable because there was an immediate need to act in order to protect or preserve life or prevent serious injury. *Brimage v. State,* 918 S.W.2d 466, 482 (Tex. Crim. App. 1994); *McNairy v. State,* 835 S.W.2d 101, 106-07 (Tex. Crim. App. 1991); *Bray v. State,* 597 S.W.2d 763, 764 (Tex. Crim. App. 1980). To assess whether a warrantless search is justified under the exigent circumstances exception, we apply an objective standard of reasonableness to "the sum of all the information known to the officer at the time of entry." *Parker v. State*, 206 S.W.3d 593, 600 (Tex. Crim. App. 2006).

The trial court in this case entered the following conclusion of law:

10. The officers were permitted to move across the living room and down the hallway to contact the person thought to be the runaway child for her own protection and safety and to investigate.

A variety of situations may place a police officer in situations where a warrantless entry due to exigent circumstances is viewed as reasonable by that officer. *McNairy,* 835 S.W.2d at 107. "Situations creating exigent circumstances usually include factors pointing to some danger to the officer or victim, an increased likelihood of apprehending a suspect, or the possible destruction of evidence." *Id.*

Here, the evidence presented the following facts. Officer Moncada learned that a thirteen-year-old female runaway was living in an apartment in Boerne, Texas. Recalling that he had seen a young female named Erica at that apartment, Officer Moncada, along with Officer Rutledge, decided to go to the apartment to perform a "knock and talk." Both officers testified that they did not have any concerns necessitating the procurement of a warrant, and Officer Moncada further testified that he did not believe Erica was in danger based on his earlier visit at the apartment. Over an hour after receiving the information, the officers arrived to the apartment, where both officers received permission to enter the apartment. Accordingly, prior to their entry into the apartment, it is undisputed that exigent circumstances were not present.

Because the officers did not perceive the need for a warrant or the existence of exigent circumstances prior to their entry into the apartment, our inquiry in terms of exigent circumstances is confined to the time period between the officers' entry into the apartment and Officer Moncada's movement down the hallway. Thus, any additional facts raising a question of exigent circumstances must have been observed during the short time span of two minutes. Here, the additional facts include the following set of facts. Officer Moncada was told by Heriberto that Erica was in the shower. Officer Moncada testified that he did not hear the shower running. Heriberto called out for Erica twice and told Officer Moncada that she would come out in a minute. Abilino Ortiz walked out

of the west bedroom and respectfully complied with Officer Moncada's instruction to sit in the living room. Under an objective standard, these facts coupled with the fact that Officer Moncada never testified that Erica was in any danger do not support the trial court's conclusion of law that the officers could proceed down the hallway under exigent circumstances. *See Parker*, 206 S.W.3d at 600. The lack of the sound of running water and Erica's failure to respond from the bathroom within a short time span cannot, absent further evidence, support the conclusion that Erica was in danger under an objective standard. *See Parker*, 206 S.W.3d at 600. Accordingly, the State did not meet its burden in providing evidence that would lead an officer to reasonably conclude exigent circumstances were present.

Not having valid consent and without evidence to support a protective sweep or exigent circumstances, Officer Moncada did not have the right to proceed down in the hallway, where he saw the two men throw items under the bed in the west bedroom. Accordingly, the trial court erred in denying the motion to suppress.[2]

### CONCLUSION

The trial court's judgments are reversed, and the cause is remanded to the trial court for further proceedings.

Marialyn Barnard, Justice

Publish

---

[2] In view of our holding, we do not reach Heriberto's remaining issues because their resolution is not necessary to the disposition of this appeal. TEX. R. APP. P. 47.1.