



# MEMORANDUM OPINION

Nos. 04-08-00236-CR and 04-08-00237-CR

Eduardo **VALTIERRA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Kendall County, Texas
Trial Court No. 4610 and 4611
Honorable Stephen B. Ables, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:      Catherine Stone, Chief Justice
             Karen Angelini, Justice
             Rebecca Simmons, Justice

Delivered and Filed:  November 17, 2010

AFFIRMED

This case is on remand from the Court of Criminal Appeals.  *Valtierra v. State*, 310 S.W.3d 442 (Tex. Crim. App. 2010).  The issue on appeal is whether the trial court erred when it failed to grant Appellant Eduardo Valtierra's motion to suppress.  Valtierra argues that the motion should have been granted because: (1) the officers lacked consent to enter and search the residence, and (2) the subsequent search warrant obtained by the officers was based on illegally obtained evidence and, therefore, lacked probable cause.  We affirm the order of the trial court.

**FACTUAL BACKGROUND**

Boerne Police Officers Pedro Jose Moncada and John Rutledge were dispatched to the Valtierra apartment to conduct a "knock and talk" in regard to a possible thirteen-year-old runaway identified as "Erica." Officer Moncada recalled speaking to a young female named Erica, in an unrelated incident, at the same residence the previous week. After Officer Moncada knocked on the door of the residence, Heriberto Valtierra (Appellant Eduardo Valtierra's brother and co-defendant) opened the door. Officer Moncada, speaking in Spanish to Heriberto, inquired about Erica; and Heriberto informed him that she was in the shower.[1] Officer Moncada then requested permission to enter the residence, and according to the officer, Heriberto gave oral consent. After both officers entered the residence, and were standing just inside the front door, Officer Moncada asked to speak to Erica. Heriberto replied, "Ah, yes. She'll come out in a minute. Erica, they're calling you." To the officers' surprise, a second adult male, later identified as Alibino Ortiz, walked out of a bedroom and into the living room. Up to that point, the officers were under the impression that only Heriberto and Erica were in the apartment.

As Officer Moncada proceeded toward the bathroom, he looked into the bedroom on the west side of the residence, and saw Appellant Eduardo Valtierra and a fourth adult male sitting on the floor next to the bed. When the two individuals saw the officer, they quickly "stuffed" something under the bed. The officers subsequently moved Eduardo and the fourth man to the living room without incident. Officer Rutledge subsequently conducted a limited search of the bedroom where he found evidence of drug paraphernalia. Based on Officer Rutledge's

---

[1] Both officers wore recording devices and two audio recordings were played for the trial court. The entire exchange, however, was conducted in Spanish and required an interpreter to file an English translation. Additionally, a portion of the recording is unintelligible and is the focus of a significant portion of the hearing on the motion to suppress.

discovery, the officers obtained a search warrant ultimately resulting in the discovery of narcotics, drug paraphernalia, and a stolen firearm.

The trial court denied Eduardo's pretrial motion to suppress, and filed findings of fact and conclusions of law. Eduardo subsequently entered a plea of guilty and this appeal followed.

### STANDARD OF REVIEW

An appellate court reviews a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005). "[B]ecause it is the trial court that observes first hand the demeanor and appearance of a witness," rather than an appellate court that reviews an impersonal record, "the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given [to] their testimony." *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

"In reviewing a trial court's ruling on a motion to suppress, an appellate court must view the evidence in the light most favorable to the trial court's ruling." *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, as it did here, we determine whether the evidence, viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Id*. We then review "the trial court's legal ruling *de novo* unless the trial court's supported-by-the-record explicit fact findings are also dispositive of the legal ruling." *Id*.; *see also Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006) (opining on why appellate courts are to apply a deferential standard of review to a trial court's determination of historical facts when that determination is based on evidence admitted at a suppression hearing). We uphold the trial court's legal ruling if it is supported by the record and "correct on any theory of law applicable to the case," even if the trial court gave the wrong reason for its ruling. *See State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

## SEARCH OF THE RESIDENCE

Eduardo Valtierra contends that the search of the apartment violated the Fourth Amendment to the U.S. Constitution as well as article I, section 9 of the Texas Constitution. The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. CONST. amend. IV. "A warrantless police entry into a person's home is presumptively unreasonable unless it falls within the scope of one of a few well-delineated exceptions." *Johnson v. State*, 226 S.W.3d 439, 443 (Tex. Crim. App. 2007) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). In the present case, we examine the scope of the consent the officers had to enter the residence.

### A. Consent to Enter the Apartment

The trial court found that "Officer Moncada received oral consent to enter the apartment from Heriberto Valtierra." There is evidence in the record that Heriberto gave Officer Moncada, who was seeking information about a possible female runaway, consent to enter the residence. The trial court, therefore, did not abuse its discretion in denying the motion to suppress based on the initial consent to enter the apartment.

### B. Basis to Proceed Further Into Apartment and Conduct a Protective Sweep

Consent to enter a residence does not, however, provide consent for a police officer to proceed further into a residence or extend consent to search the residence. *See LeBlanc v. State*, 424 S.W.2d 434, 436 (Tex. Crim. App. 1968). Once permitted into the residence, an officer may only take action in accordance with the purpose for which he was invited or allowed into the residence. *Cf. id.*; *State v. Lofgren*, 47 S.W.3d 167, 169 (Tex. App.—Austin 2001, no pet.). Courts however may "look beyond the language of the consent itself, to the overall context, which necessarily encompasses contemporaneous police statements and actions." *United States*

*v. Turner*, 169 F.3d 84, 87 (1st Cir. 1993). According to the Court of Criminal Appeals, it was objectively reasonable for Officer Moncada to conclude that Heriberto's consent to come inside the apartment and talk to Erica included consent to walk down the hallway to knock on the bathroom door. "Because the record supports implied, if not explicit, consent to walk some twenty feet to the bathroom door, . . . the officer's actions were reasonable and within the scope of the original consent to enter and investigate Erica's whereabouts." *Valtierra*, 310 S.W.3d at 444. Because Officer Moncada was lawfully present in the hallway when he observed the two men in the bedroom making furtive gestures and throwing items under the bed, we turn to the protective sweep that led to the discovery of the contraband.

The Fourth Amendment prohibits only *unreasonable* searches and seizures. *Maryland v. Buie*, 494 U.S. 325, 331 (1990). Reasonableness is measured in terms of a balance between the individual's privacy interest and the promotion of a legitimate governmental interest. *Id*. A defendant's legitimate privacy interest in his residence must be weighed against the officers' need to protect themselves from attack. *Id*. at 328, 333 (authorizing police officers to protect themselves and others at the site: "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others."); *Reasor v. State*, 12 S.W.3d 813, 816 (Tex. Crim. App. 2000). Accordingly, the Supreme Court has held that "[t]he Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 337. Importantly, however, officers may not conduct a protective sweep as a matter of right. *See id.* at 336. To the contrary, a protective sweep is permitted only when "justified by a reasonable, articulable suspicion that the house is

harboring a person posing a danger to those on the arrest scene." *Id.* We must keep in mind that the Fourth Amendment bars only unreasonable searches and seizures. *Id.* at 331. Even without a warrant, a search may be permitted when a strong public interest exists for the search. *Id.*

The issue in this case is whether either Officer Moncada or Officer Rutledge articulated a reasonable belief that another individual or weapons might be in the residence that could result in harm to the officers. *See Smith v. State*, No. 05-08-00139-CR, 2009 WL 332261, at *5 (Tex. App.—Dallas Feb. 12, 2009, no pet. h.) (mem. op.). The trial court specifically found:

> 9.  An individual walked out of one of the bedrooms and was instructed by Officer Moncada to come to the living room and sit on the couch, which the individual did without incident.

The trial court then concluded:

> 9.  Once the officers saw unknown individuals emerging from the general direction of the person whom the officers thought to be the runaway they were looking for, the officers were entitled to move across the living room and down the hallway to conduct a protective sweep and a weapon search for officer safety.

We therefore examine the record to determine if the facts support the trial court's conclusion.

Valtierra argues that the "furtive gestures" observed by Officer Moncada were insufficient to justify entry into the bedroom under the Fourth Amendment, and therefore he was subjected to an illegal search. Valtierra claims that because the officers admitted they did not feel they were in danger or their safety was in jeopardy, and the apartment occupants were in the living room unarmed and cooperating, the search was unlawful under the Fourth Amendment.

At the hearing on the motion to suppress, and as found by the trial court, a male individual walked out of one of the bedrooms after the officers entered the apartment. The individual came out of the living room and sat on the couch as he was instructed. When Officer Moncada walked down the hallway to the bathroom, from where the initial individual had exited, he saw two more individuals in a bedroom, sitting on the ground next to a bed. According to

Officer Moncada, when these individuals saw him, they looked extremely nervous and engaged in "furtive movements," throwing unknown objects underneath the bed. Officer Moncada stated this was suspicious behavior, and further testified that he was unable to determine what the items were that were thrown under the bed. It was at that point he requested Officer Rutledge to come down the hallway. The individuals were "pulled . . . out of the bedroom" and asked to sit in the living room, which they did. Officer Moncada said he requested Officer Rutledge's assistance because he did not know what was thrown under the bed, but it "could have been a weapon."

After removing the two individuals from the bedroom, Officer Moncada called for Erica, who finally came out of the bathroom, and she was placed in the living room as well. At that point, Officer Rutledge entered the bedroom. When Officer Rutledge entered the bedroom, Officer Moncada returned to the living room to watch the individuals seated on the couch; none of whom were handcuffed. Officer Moncada admitted that "at the beginning" he was not concerned that either he or Officer Rutledge would be attacked by the occupants of the apartment and did not fear for their safety, but when asked why Officer Rutledge entered the bedroom, he stated it was to "find out what they threw out and mak[e] sure there's no weapons, nobody else in the room." He also testified that at the time he entered the apartment, he thought there were only two people inside, and did not believe anyone else was in the apartment. This belief was obviously dispelled by the discovery of three additional male individuals. Officer Moncada expressed concern that he and Officer Rutledge were "out numbered" and he "didn't want to take any chances." He stated he wanted Officer Rutledge to enter the bedroom to check for weapons and other individuals. After Officer Rutledge entered the bedroom, he ultimately came out and told Officer Moncada he found drug paraphernalia in plain view.

Officer Rutledge testified he went into the bedroom to "check for a weapon, see if anybody else [was] possibly in the room, because now we're outnumbered." He admitted that there were no apparent safety issues when they entered the apartment; however, once they moved to the back of the apartment they "need[ed] to make sure that there is nobody else in that house. Somebody throw's [sic] something under the bed. It's now officer safety time." The officer stated he walked into the bedroom and first checked the closet, which was open. Finding no one in the closet, he walked over toward the bed. As he was walking, he saw a television stand, on top of which were two "1-by-1 Ziplock [sic] baggies containing what appeared . . . to be a controlled substance." One of the baggies contained "a large amount of powder," and "[t]he other one had some small just granules or say like leftovers." Officer Rutledge also saw a scale. He stated he did not have to move anything to see the baggies, and that he did not touch anything.

Officer Rutledge said he then went over to the bed and "retrieved what was thrown under the bed." He described it as a light bulb with the metal base broken off, wrapped in a napkin, with a straw and lighter next to it. Officer Rutledge stated that in his experience as a police officer, such items are used "to smoke a controlled substance." He further stated the light bulb appeared to have burned residue on it. After seeing the plastic baggies and retrieving the light bulb, Officer Rutledge walked into the living room and told Officer Moncada what he had seen, and that he intended to contact a supervisor. After failing to get a written consent to search, Officer Rutledge called an investigator and had him type up a search warrant. Later, the search warrant arrived and officers searched the apartment, finding narcotics, drug paraphernalia, and a stolen firearm. *See Valtierra v. State*, 293 S.W.3d 697, 700 (Tex. App.—San Antonio 2009), *rev'd*, 310 S.W.3d 442 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the trial court's denial of Valtierra's motion to suppress, we hold that the evidence supports the trial court's factual findings, and hold that the trial court did not abuse its discretion in denying the motion. *See Kelly*, 204 S.W.3d at 818. The officers legally entered the apartment and Officer Moncada had consent to proceed down the hallway. *See Valtierra*, 310 S.W.3d at 451–52; *see also United States v. Gould*, 364 F.3d 578, 587 (5th Cir. 2004). The officers' presence in the apartment was for a valid law enforcement purpose, i.e., trying to determine if an underage runaway was in the apartment. *See Gould*, 364 F.3d at 587. The protective sweep conducted by Officer Rutledge was supported by a reasonable, articulable suspicion that the bedroom might harbor another individual, and perhaps weapons, and was, according to his testimony, nothing more than a cursory inspection of those spaces where a person or weapon might be found. *See id.*; *Reasor*, 12 S.W.3d at 816–17. As Officer Rutledge stated, there might have been someone else in the apartment, and a weapon might have been thrown under the bed.

Moreover, when the intrusion of the cursory sweep is balanced against the officers' safety, a strong public interest, the sweep was neither unreasonable nor illegal. *See Buie*, 494 U.S. at 331. The officers had a strong interest in assuring themselves that there were no other individuals in the house, individuals who might pose a danger and could unexpectedly launch an attack. *See id.* at 333. After all, when they first entered the apartment, Officer Moncada believed there were only two individuals inside. However, subsequent to their initial entry, the officers observed no less than three male individuals exiting and acting suspiciously in the bedrooms of the apartment. And, both officers feared being out-numbered.

Accordingly, we hold the protective sweep was justified by the evidence, and the trial court erred neither in concluding that a protective sweep was necessary for officer safety, nor in

denying the motion to suppress based on Valtierra's challenge to the protective sweep. Because we hold that the evidence supports Officer Rutledge's entry into the bedroom as a protective sweep, we need not address whether it was also justified based on the existence of exigent circumstances.

## CONCLUSION

A reasonable person would have concluded that Heriberto's consent was sufficient to proceed down the hallway to talk to Erica. As he walked down the hallway, Officer Moncada viewed through an open doorway two individuals making furtive gestures. This evidence provided a reasonable basis for Officer Rutledge's entry into the bedroom to conduct a protective sweep. Accordingly, the order of the trial court is affirmed.

Rebecca Simmons, Justice

DO NOT PUBLISH